Bothwell v. Farwell.

BOTHWELL *et al.* v. FARWELL *et al.*

1.   **Evidence** : GENERAL OBJECTION TO INTERROGATORY AND ANSWER : EFFECT. When a whole interrogatory and its answer are objected to as incompetent and irrelevant, the objection is properly overruled if any portion of the interrogatory and answer is competent and relevant.

2.   —— : OBJECTIONS TO : WHAT CONSIDERED ON APPEAL. Only such objections to evidence as are made on the trial will be considered on appeal. (Compare *Jaffray v. Thompson*, 65 Iowa, 326 ; *Taylor v. Wendling*, 66 Iowa, 562.)

3.   —— : CROSS-EXAMINATION : WHAT PROPER. Where an answer sought to be elicited by a question on cross-examination tends in some degree to contradict the testimony in chief of the witness, it is competent and relevant.

4.   **Sale** : WARRANTY : INSTRUCTIONS. An objection to instructions as to what would constitute a warranty, on the ground that they took from the jury statements made by the vendor during the negotiations, but four or five weeks before the sale, *held*, upon examination, to be without foundation.

5. ——; OF BUCKS: WARRANTY AS TO HEALTH: SUBSEQUENT
DISEASE. A warranty upon the sale of bucks that they were all
sound and in a healthy condition, and that each one would serve
twenty-five ewes, *held* to refer solely to their condition at time of
sale, and not to be a guaranty against future disease rendering
them unable to serve twenty-five ewes each.

*Appeal from Jones District Court.*—HON. JAS. D.
GIFFEN, Judge.

FILED, MARCH 12, 1888.

ACTION to recover remainder of purchase price of
one hundred and seven merino bucks. Defendants
admit the purchase, and that the amount alleged to be
due has not been paid, but deny indebtedness, by reason
of alleged breaches of warranty in the sale of the bucks.
Defendants seek to recover of plaintiffs, by way of
counter-claim (1) the portion of the purchase price
already paid, with interest ; (2) for feeding and caring
for the bucks, including the value of hay and grain fur-
nished ; (3) for loss of profits alleged to have resulted
from the failure of the bucks to render the service for
which they were purchased. The case was tried to a
jury, and a verdict returned in favor of plaintiffs for the
amount of their claim. From the judgment rendered
on the verdict the defendants appeal.

*Herrick & Doxsee*, for appellants.

*Sheean & McCarn*, for appellees.

ROBINSON, J.—It appears from the admissions of
record and the evidence that plaintiffs sold to defend-
ants on the twenty-third day of November, 1884, fifty
bucks, and on the fourth day of December, 1884, fifty-
seven more. All of the purchase price of the first lot
was paid at the time of the sale, excepting one hundred
dollars. Nothing was paid on the second purchase.
The amount alleged to be due the plaintiff is $472.51,
with interest thereon at six per cent. from the first day
of July, 1886. The defendants allege that plaintiffs

verbally warranted the bucks in controversy to be of fine grade; that they were bred and raised in Missouri; that they were all sound and in a healthy condition, and that each one of them would serve twenty-five ewes. Defendants further allege that the bucks were purchased on said warranty, but that they were not in a sound and healthy condition, but were diseased and unfit for service; that they were not bred in Missouri, but in New York and other eastern states; that all these facts were known to plaintiffs at the time the warranty was made and the sale consummated. The alleged warranty is denied by plaintiffs. It is shown that the bucks rendered but little service, and that all but fourteen died before the fourteenth day of May, 1885, and it is alleged that they were worthless when sold.

I.   The purchase was effected on the part of defendants by an agent named Berry. The deposition of this agent was taken by defendants and read at the trial. He testifies that the bucks were purchased at Antonita, Colorado, for use near Tres Piedras, New Mexico, with the ewes of defendants. He also testified as to the condition of the bucks and the symptoms of the disease which is claimed to have affected them, and that he tried various remedies. A portion of his evidence was in the nature of expert testimony. On cross-examination, he was asked if he did not write a letter, dated April 4, 1885, to one of the plaintiffs, in which he said: "For God's sake, don't bring any more bucks up in this altitude in the fall, for it will not do. I am satisfied of that;" and, if so, to state how he knew it would "not do to bring bucks up into the altitude of Tres Piedras in the fall. What experience, if any, have you had in that respect?" The answer was: "I wrote a letter   *   *   *   some time to about that effect. The reason I wrote to him not to bring any bucks here in the fall, he wanted me to sell some bucks for him. He offered me half we could make on them, and I did not want him to bring them." The witness was then asked if he was not satisfied when he wrote the letter that the death of the bucks was due to the change of climate,

and answered: "In the spring, before the grass came, I thought that was the cause, but they still kept dying in the spring, after the grass came, in warm weather. Then I did not know how to account for it, and do not yet." These questions and answers were objected to by 1. EVIDENCE: defendants, when the deposition was read general objection to interrogatory and answer: effect. vant," and the objections were overruled. The objection made to each interrogatory, and the answer thereto, was to the whole, and not to any part, and, therefore, was properly overruled, if any portion of the interrogatory and its answer were both competent and relevant. It may be conceded that the 2. ——: objections to what considered on appeal. testimony given was not the best evidence of the contents of the letter referred to ; but the objection made does not raise that question. *Taylor v. Wendling*, 66 Iowa, 562 ; *Jaffray v. Thompson*, 65 Iowa, 326. It may be that the evidence was not strictly proper on cross-examination ; but the objection made does not require us to decide whether it was or not. We are clear that so much of the first question as we have quoted, and so much of the answer thereto as was responsive, were not open to 3. ——: cross-examination: what proper. the objection made. The witness had been permitted to testify as to his knowledge of the cause of the death of the bucks, and the real cause of their death was an issue in the case. The answer sought to be elicited by the question tended in some degree to contradict the testimony of this witness as to that issue, and it was, therefore, relevant. The second interrogatory in question was directed to the same matter as the first, and the answer thereto explained the clause of the letter under consideration. We are satisfied that there was no prejudicial error in the rulings of which complaint is made.

II. Defendants insist that the court erred in refusing to give an instruction asked by them in regard to the warranties which would form a part of the contract for the sale of the second lot of bucks. We do not think the instruction in question was a proper one to

give. We are of the opinion that the charge of the court sufficiently instructed the jury in regard to the warranties in issue.

III. Defendants complain of a paragraph of the charge which instructed the jury in regard to what declarations or affirmations would constitute a warranty, on the ground that the language used was such as would take from the consideration of the jury certain statements alleged to have been made on the part of plaintiffs during the negotiations, and some four or five weeks before the first sale. The paragraph of the charge referred to directs the attention of the jury to any declaration or affirmation made "just before or at the sale of the bucks in question." An instruction given at the request of defendants directs the attention of the jury to statements made "at the time of or during the negotiations culminating in the purchase of the sheep." The charge of the court refers to the various matters included in the alleged warranty, and of necessity directed the attention of the jury to conversations in which they were discussed. We do not think the jury could have been misled, as suggested by counsel for defendants. If further instruction was desired, it should have been asked.

IV. The court charged the jury that if the bucks were warranted, and were as warranted at the time of the sale, then, if "they afterwards became diseased, unsound or incapable of serving ewes, such after-acquired disease, unsoundness or incapability would be no defense in this action." Defendants object to this instruction, on the ground that the warranty was that the bucks would serve the ewes at a time subsequent to the date of the sale. We do not think this objection is sustained by the record. There is no claim that the bucks were warranted not to become diseased, and we do not think that a fair construction of the pleadings will sustain the claim of defendants. It is true that the alleged warranty is "that they would each serve at least twenty-five ewes;" but the agent was sent to purchase the

4. SALE: warranty: instructions.

5. ——: of bucks: warranty as to health: subsequent disease.

bucks, the answer alleges, "if from plaintiffs' statements, and the appearance of said bucks, they were fine-bred bucks, and guaranteed to be bred and raised in Missouri, to be all right, fit for service and in a sound and healthy condition." It is alleged in one of the counter-claims that, "had said bucks been as represented and warranted," they would have been worth the price paid, while in another it is averred that, "had the bucks * * * been as represented and warranted," defendants would have at least twenty-five hundred lambs, and of a superior quality. The breaches of warranty specified are "that at the time of the purchase said bucks were not in a sound and healthy condition, but were diseased and unfit for service, and said bucks were not bred and raised in Missouri." We think the alleged warranty in regard to the ability of the bucks to render service must be held to apply only to their condition at the time of sale, and not that it should continue.

V. Objections are made to other portions of the charge to the jury. It is not necessary to refer to them in detail, but it is sufficient to say that we discover no error in them.

VI. Various objections are made in regard to the ruling of the court excluding evidence which was designed to sustain defendants' counter-claims. It is evident that the jury found that there was no warranty in the sale of the bucks, or else that there was no breach of warranty. In either case the rulings of which defendants complain could not have been prejudicial to them; and we need not consider them further.

AFFIRMED.