Brody v. Dickie.

CHARLES S. BRODY, ADMINISTRATOR, vs. JAMES DICKIE.

Third Judicial District, Bridgeport, October Term, 1923.
WHEELER, C. J., BEACH, CURTIS, KEELER and WOLFE, Js.

A finding of the trial court upon conflicting evidence or upon the weight
    or effect of evidence, will not be disturbed by this court on appeal;
    nor will its conclusion as to contributory negligence be reversed,
    unless it violates some rule of law, logic or reason, or is contrary
    to or inconsistent with the subordinate facts found.

Argued November 1st—decided December 13th, 1923.

ACTION to recover damages for causing the death of
the plaintiff's intestate by negligence, brought to and
tried by the Superior Court in Fairfield County, *Hinman, J.;* facts found and judgment rendered for the
defendant, and appeal by the plaintiff. *No error.*

Plaintiff's intestate was a passenger on an automobile, which was being towed by another proceeding
in an easterly direction on Maplewood Avenue in the
city of Bridgeport. The driver of the towing car intended to turn in a northerly direction from Maplewood Avenue on to Howard Avenue. Defendant,
by his servant, was operating an automobile truck,
heavily loaded, on Maplewood Avenue, in a westerly
direction. Plaintiff's intestate and a companion named
Raski were riding on the right running-board of the
towed car as it was being towed, the towing car being
a Cadillac and the towed car being an Imperial. The
Cadillac car, together with the Imperial automobile,
had stopped near the corner of Maplewood and Howard
avenues and then proceeded easterly along Maplewood avenue. At the intersection of Maplewood and
Howard avenues, the Cadillac car, towing the Imperial
car, turned in a northerly direction on to Howard Avenue. No warning or signal was given of the intention

to turn the cars to their left into Howard Avenue. Defendant's truck was approaching from the right of the Cadillac and Imperial cars as they so turned. Both of the cars and defendant's truck arrived at the intersection of the two streets at substantially the same time. The Cadillac and Imperial cars were traveling slowly, the Cadillac being in second gear. Defendant's truck, just before reaching the intersection, was traveling at about ten miles an hour. In turning the corner the Cadillac car was driven to the left of the center of the intersection and the Imperial car followed still farther to the left and near the curb. When defendant's driver saw the two cars turning into Howard Avenue he did not blow his horn, or change his course, which was straight along the northerly (his right) side of Maplewood Avenue, but he reduced the speed of his truck to six or eight miles an hour. When the Imperial car was near the center of Maplewood Avenue, it appeared to Raski, from the position of the car on which he was riding and the course in which the truck was traveling, that the truck would collide with the Imperial car, and he jumped off the running-board and ran around the rear of the car to the sidewalk, shouting to plaintiff's intestate to "look out." Defendant's driver did not see Raski jump or run, but when the Imperial car had turned farther into Howard Avenue he saw plaintiff's intestate standing on the running-board, clinging to a bow of the top. There was nothing in the situation, appearance or conduct of plaintiff's intestate, from the time defendant's driver saw him until he jumped, which indicated to the driver an intention on the part of plaintiff's intestate to jump from or leave the running-board of the car. A few moments after Raski jumped, and as the rear end of the Imperial car was near the northerly line of Maplewood Avenue and had passed a short distance out of the path of de-

fendant's truck as it was then traveling, plaintiff's intestate jumped from the running-board toward the east, in front of and not more than six or seven feet ahead of the defendant's truck. Defendant's driver, when he saw plaintiff's intestate jump, turned his truck sharply to the left and applied the brake, but the front of the truck struck plaintiff's intestate, one of the wheels ran over him, and he thereby sustained injuries from which he died soon after. Defendant's truck did not collide with the Imperial car, but passed at least four feet to the rear of the car, and stopped within six to ten feet after striking plaintiff's intestate.

*Joseph G. Shapiro*, with whom was *Harry Allison Goldstein*, for the appellant (plaintiff).

*Samuel Reich*, for the appellee (defendant).

WOLFE, J. The plaintiff, in the first instance, seeks a correction of the finding of the trial court by having certain paragraphs stricken out and certain other paragraphs added. This court has repeatedly stated that it "will not correct a finding of facts unless the record discloses that it includes matters found to be facts without evidence, or fails to include material facts which were admitted or undisputed. The determination of the trial court on conflicting evidence, or on the weight or effect of evidence, will not be disturbed." *Hayward* v. *Plant*, 98 Conn. 374, 379, 119 Atl. 341, 343; *Hine* v. *McNerney*, 97 Conn. 308, 311, 116 Atl. 610.

An examination of the record in the present case clearly demonstrates that the finding states no fact which was found without evidence; nor does it omit to state a material fact which was admitted or undisputed.

The plaintiff assigns as error the failure of the trial

court to find and to hold (1) that the propelling by the defendant of his truck into such close proximity to the car upon which plaintiff's intestate was riding, as to create a reasonable apprehension on the part of the intestate that a collision was imminent and inevitable, impelling him to jump to avoid the consequences of such collision, was negligence on the part of the defendant; and (2) that the defendant in the exercise of reasonable care should have seen the companion of the decedent, who was riding on the same running-board, jump off just previously to the decedent doing so, and was therefore bound to apprehend that the decedent would do likewise and should have acted to prevent injury from such anticipated action.

The plaintiff claims "that a person who is placed in a position of peril by another's negligence, cannot be regarded as being guilty of contributory negligence if he takes any steps to protect his own safety, even though having taken some other course he might have avoided injury." The authorities seem to be in practical agreement on this point. Huddy on Automobiles (5th Ed.) p. 494. "One confronted by sudden danger from a rapidly moving automobile is not guilty of contributory negligence because, in an effort to get out of the way, he acts contrary to what was expected of him by the driver." *Kuchler* v. *Stafford*, 185 Ill. App. 199. But the rule thus invoked by the plaintiff is not applicable to the facts found in this case; and these facts negative the second ground of error above. The trial court was hence right in holding that there was nothing in the situation of the parties, as disclosed in the finding, to charge the defendant with "a duty to see said Raski [the companion of the decedent, who was also riding on the running-board and who had jumped just previously], or for any other reason to anticipate that the decedent might suddenly precipitate himself in the path of the

truck"; and that "the impossibility of avoiding him [plaintiff's intestate] was due to the close proximity of the point at which the decedent alighted in the street to the front of the truck, and not to excessive speed, lack of control such as reasonable care would dictate under the circumstances, or other negligence of the driver."

The conclusion of the trial court as to defendant's failure to exercise due care, is not in violation of any rule or principle of law, nor is it in conflict with the rules of logic or reason, or contrary to or inconsistent with the subordinate facts, and hence it cannot be reviewed by us.

There is no error.

In this opinion the other judges concurred.